UNION SLATE COMPANY *vs.* JOSIAH TILTON.

Somerset.    Opinion February 20, 1882.

*Liens on State. R. S., c. 91, § 26. " Port of shipment." Attachment.*

A person who labors in manufacturing slate at a place other than "in the quarry," has no statute lien thereon for the wages of his labor.

Where slate was quarried at Mayfield, and carried thence to Skowhegan, to a shop one-half mile from the railroad station, and there cut and finished for mantels, and boxed and placed in a store-house near the shop, when not required to be immediately hauled to the station to be shipped to purchasers; *Held,* that the shop or store-house whence mantels were sold and delivered, must be considered " their port of shipment," within the meaning of R. S., c. 91, § 26, and that when the mantels were completed and ready for delivery either at the shop or store-house, they had arrived at their port of shipment and the thirty days begun to run.

When a suit is brought to enforce the lien upon slate, under R. S., c. 91, § 26, it must be shown affirmatively that the attachment was made within thirty days next after the slate arrived at the port of shipment.

Where suits are brought to enforce statute liens upon manufactured slate, and the liens cannot be upheld, the attachments may still be considered valid, as those of general attaching creditors, not seeking to enforce liens.

ON REPORT.

Replevin of a quantity of slate mantels.

Plea, was *non cepit,* with a brief statement, alleging that the mantels were not the property of the plaintiff, but were held by

the defendant as sheriff of the county, by virtue of four attachments made by him as the property of the Mayfield Slate Company, on four writs against that company, in favor of Peter Cunningham, Michael B. Mahar, Peter Martin and Charles S. Robbins, respectively, brought to enforce statute liens thereon.

The claims of Cunningham and Martin were assigned, and the name of W. H. Ward, assignee, was indorsed on the back of those writs, and the name of Anson W. Goodrich, as assignee of Mahar's claim, was indorsed on the back of that writ.

The material facts, so far as the limits of a report will allow, are stated in the opinion.

*C. Record,* for the plaintiff, cited: *Treadwell* v. *Salisbury M'f'g Co.* 7 Gray, 393; *Sargent* v. *Webster,* 13 Met. 504; *Frost* v. *Ilsley,* 54 Maine, 351; *Gray* v. *Bennett,* 3 Met. 522; *Simpson* v. *McFarland,* 18 Pick. 427; *Parks* v. *Crockett,* 61 Maine, 489:

*Walton and Walton,* for the defendant.

The case shows that as to nineteen mantels, called the Tibbetts mantels, the plaintiffs had no title. S. C. 69 Maine, 247. Consequently as to these plaintiffs, the action must fail. *Gordon* v. *Harper,* 7 T. R. 9; *Wyman* v. *Dorr,* 3 Maine, 186; *Wingate* v. *Smith,* 20 Maine, 287; *Johnson* v. *Neale,* 6 Allen, 228.

Then there should be an order for return. *Gates* v. *Gates,* 15 Mass. 310; *Quincy* v. *Hall,* 1 Pick. 357; *Collins* v. *Eames,* 15 Pick. 65. In *Ingraham* v. *Martin,* 15 Maine, 373, and *Wheeler* v. *Train,* 4 Pick. 168, the property was shown to be in the plaintiff at the time of the commencement of the action.

The laborer's lien on slate is enforced the same as mechanic's lien, *Bryant* v. *Parker,* 65 Maine, 576, and the lien on logs before notice was required. *Parks* v. *Crockett,* 61 Maine, 491.

Robbins' labor was not in fact performed in the quarry. His labor was performed in manufacturing the slate, which, it is a matter of general knowledge, is not and cannot be done in the quarry. This was known by the legislators when they used the words "in the quarry" in the statute. They clearly meant to give a lien to the laborer who worked at the manufacturing as well as

to him who worked at mining and quarrying, but if the language is construed literally, then the laborer at manufacturing can have no lien. The statute evidently intended to embrace slate from the particular quarry.

As to the other three laborers there is no question.

"Arrival at the port of shipment," means arrival at the place or port from which they are to be shipped by water or rail, *i. e.* at a sea port or depot. *Sheridan* v. *Ireland*, 66 Maine, 69. The statute presupposes the mining, quarrying and manufacturing to be all done before it is to be moved to the "port of shipment."

Hence the shop at Skowhegan where the slate was manufactured, could not be called the port of shipment; it must be removed from there, and arrive at a port of shipment after its manufacture.

But some of the slate had not been at Skowhegan thirty days at the time of the attachments, and it was mixed with the other slate. See *Spofford* v. *True*, 33 Maine, 283.

The counsel further ably argued the question of fraud, in the purchase by the plaintiff, citing: *Perkins* v. *Pike*, 42 Maine, 141; *Redington* v. *Frye*, 43 Maine, 587; Bump, Fraudulent Conveyances, 254, 258, 453; *Johnson* v. *Whitwell*, 7 Pick. 71; *Wheelden* v. *Wilson*, 44 Maine, 20; *Drury* v. *Cross*, 7 Wall. 303; Field, Corporations, 187, 421; *Parker* v. *Vose*, 45 Maine, 60; *E. & N. A. Ry. Co.* v. *Poor*, 59 Maine, 277; *Crowninshield* v. *Kittridge*, 7 Met. 520.

VIRGIN, J. Replevin of certain slate mantels. The plaintiff corporation claims title by virtue of an alleged sale from the Mayfield Slate Company, on December 31, 1875.

The defendant, as sheriff of the county, justifies under four writs, dated January 21, 1876, in favor of as many plaintiffs against the Mayfield Slate Company, in which they severally claim a lien upon the property replevied, under the provisions of R. S., c. 91, § 26, for their personal labor upon it.

The court are to render such judgment as the law and evidence warrant.

The plaintiff corporation having come into possession on December 31, 1875, by virtue of the sale, and the property not having been attached by the defendant until January 21, following, the plaintiff's *prima. facie* title must prevail, unless : (1,) The attaching plaintiffs had liens thereon, and had taken seasonable and appropriate steps to enforce them by their attachments ; or (2,) The alleged sale was fraudulent as to the attaching plaintiffs, and their attachments can be upheld as those of general attaching creditors, even though their liens fail for any cause.

1. There is no pretense that Robbins ever "mined, or manufactured" any of the slate "in the quarry," at Mayfield. He was a "cutter," and did all of his work in the shop, at Skowhegan, twenty-five miles from the quarry.

The original statute (1860, c. 131,) was enacted when the only slate quarry in the State was in Brownville, which was worked for the sole purpose of manufacturing "slates" for roofing. And the legislature enacted a statute adapted to the facts, by providing that "every person who labors in mining, quarrying, or manufacturing slates in any quarry, has a lien for the wages of his labor on all the slates mined, quarried and manufactured in the quarry by him or his co-laborers, for thirty days after the slates arrive at their port of shipment." The revision commissioners dropped the form of the noun, but retained the plural form of the verb and adjective pronoun in the latter clause. But admitting that this alteration worked a change in the law and made the lien apply to all slate material, still whatever articles of slate are manufactured even now, the mining, quarrying and manufacturing must be done "in the quarry," to entitle the laborer to a lien, the same as before the revision. Our opinion, therefore, is that Robbins never had any statute lien on the mantels which were attached on his writ.

The three other lien claimants performed all of their labor "in the quarry ;" and each of them therefore had "a lien on all the slate mined, quarried and manufactured by him or his co-laborers," and he has it now, provided he seasonably and legally secured it by his writ of attachment.

By the terms of the statute, his lien continued for the period of "thirty days after the slate arrived at their port of shipment."

It is immaterial, therefore, when the labor was performed upon it in the quarry, provided that, within thirty days after its arrival at the port of shipment, he caused the slate mined, quarried or manufactured in the quarry by himself or his co-laborers, to be duly attached on a writ containing a "declaration showing the action was brought to enforce his lien," with "the other forms and proceedings therein, the same as in ordinary actions of assumpsit." R. S., c. 91, § § 26, 36.

The mantels were cut and finished at the company's shop, in the village of Skowhegan, one-half mile from the railroad station in that village. They were not all marbleized, some of them being simply cut in the desired style, and polished; and when completed, they were boxed up and deposited in a store-house near to the shop. Some of them, however, were sold and delivered at the shop, and never went to the store-house; while others were hauled to the station and shipped by rail to the purchasers. We are of the opinion that the shop or store-house whence mantels were sold, and delivered, must be considered "their port of shipment." That is their place of deposit awaiting sale and shipment, and they are never deposited at the station for any such purpose, there being no place of deposit there, but were simply unloaded there directly into the cars. If the station should be considered their port of shipment, the lien upon all those sold and delivered to vendees at the shop or store-house, would never lapse, for they would never "arrive." When mantels are completed and ready for delivery, either at the shop or store-house, they have arrived at their port of shipment, and the thirty days begin to run.

The manufacture of mantels was begun in 1873; and while we have no doubt from the evidence that each of these laborers in the quarry attached the mantels which they and their co-laborers mined and quarried, it nowhere appears affirmatively that they attached them within the thirty days next after they thus arrived. And having failed to establish this material fact, their liens cannot be upheld.

2. Can their attachments be considered valid as those of general attaching creditors not seeking to enforce liens? We perceive no good reason to the contrary. With the exception of

the additional allegation that the actions are brought to enforce liens, the declarations and proceedings are the same as in ordinary actions of assumpsit; and having been commenced before the enactment of St. 1879, c. 136, the judgments are *in personam*, and not *in rem*, R. S., c. 1, § 3. Dropping the additional allegation as surplusage, and a simple action of assumpsit remains between the owner and laborer. In the numerous cases wherein laborers have sued owners for labor on their buildings, but failed to secure liens by reason of including in their judgments non-lien items, or because no lien-claim was set out in the declarations, the judgments have been considered valid as those of general creditors. *First Nat. Bank* v. *Redman*, 57 Maine, 405; *Perkins* v. *Pike*, 42 Maine, 141; *Redington* v. *Frye*, 43 Maine, 578.

Whether or not the assignment of the claims after actions brought, and attachments made, carried the liens to the assignee, we have no occasion to decide, since we do not sustain the liens and the point becomes immaterial. But we remark in passing, that the court have recently decided a similar question in the affirmative. *Prescott* v. *Adams*, 71 Maine, 113.

3. The remaining principal question is, whether the sale of December 31, 1875, was fraudulent as to these creditors. As preliminary to that question, it is urged that the assignees are the real creditors, and that they cannot be considered as prior creditors, since they did not purchase the claims, and thereby become creditors until after the sale. But the design of the statute against fraudulent sales, was to make them void as against all demands liable to be affected thereby. The right to hold them void is not personal; but the debt, whoever may become the owner of it, can be enforced against the property, the same as if not sold. *Warren* v. *Williams*, 52 Maine, 343, 348-9.

The sale, so far as it was affected by Tibbetts being the managing director of the Mayfield Slate Company, to sell, and the general agent of the plaintiff corporation to buy, was settled for the plaintiff in 69 Maine, 244, except so far as it may affect the question of fraud.

We have carefully weighed the evidence bearing on the question of fraud, together with the nineteen reasons urged by the

learned counsel of the defendant upon that branch of the case. But bearing in mind that fraud is to be proved and not presumed, our opinion is, that while many of the facts are more or less consistent with the defendant's theory, the more significant and leading facts are consistent with an honest intention on the part of the insolvent Mayfield Slate Company, to prefer its main creditors, rather than to delay or hinder others. The sale having taken place prior to the time when the insolvent act took effect, the Mayfield Slate Company had a legal right to prefer creditors. *Sargent* v. *Webster,* 13 Met. 503. Neither do we see how it could do otherwise; for their real estate was under mortgage, and both real and personal, were under attachment to the amount of fifteen thousand dollars, at the suit of the Auburn Savings Bank. They could not continue business; they failed to raise money on their bonds; and the only alternative was to sell out for what the property would bring, and pay off the debts so far as the property would go, and close up. This the corporation had a right to do, and could sell to another corporation having the same officers. *Treadwell* v. *Salisbury M'f'g Co.* 7 Gray, 405; *Sargent* v. *Webster, supra.* There is no evidence that the property was not sold for its full value, and the proceeds applied to the payment of its debts, so far as it went.

When this action was commenced, the plaintiff had no title to the mantels purchased of the Mayfield Slate Company, by Tibbetts, on August 3, 1875, and by him sold to the company on March 6, 1876. And as to those, this action cannot be maintained. But if the sale by the company to Tibbetts was *bona fide* as to the attaching creditors, the defendants can have no judgment for a return. As to the other mantels, there must be,

> *Judgment for the plaintiff, for all the property replevied, except the mantels purchased of the Mayfield Slate Company, by Tibbetts, on August 3, 1875.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.

BARROWS, J., did not concur.